FILED
IN THIS OFFICE
SEP 08 2026
Clerk U.S. District Court
Greensboro, N.C.
BY

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO. 1:26CV919

**LEE BRODIE, JR.**

Plaintiff,

v.

**DUKE UNIVERSITY,**

Defendant.

**COMPLAINT**

Plaintiff Lee Brodie, Jr. ("Plaintiff"), filing Pro Se, complaining of Defendant Duke University ("Duke" or "Defendant"), alleges and says:

**PARTIES**

1. Plaintiff Lee Brodie, Jr. is an adult resident of Durham County, North Carolina.

2. Defendant Duke University is a private university headquartered in Durham, North Carolina, and maintains offices at 705 Broad Street, Durham, North Carolina 27705. At all times relevant to this Complaint, Duke employed more than fifteen employees and was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Family and Medical Leave Act.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; and 42 U.S.C. § 1981.

4. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4), 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 12117, and 29 U.S.C. § 2617.

5. This Court may grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202 and the remedial provisions of the statutes identified above.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Duke resides in this District, Plaintiff worked for Duke in Durham County, and a substantial part of the events and omissions giving rise to this action occurred in Durham County, North Carolina.

7. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Duke, Charge No. 433-2026-01142, alleging race discrimination, disability discrimination, and retaliation arising from the employment matters alleged herein.

8. On June 8, 2026, the EEOC issued a Dismissal and Notice of Rights concerning Charge No. 433-2026-01142. Plaintiff received the Notice thereafter and brings this action within ninety days of receipt.

9. All conditions precedent to Plaintiff's Title VII and ADA claims have been satisfied, waived, or otherwise excused.

## FACTUAL ALLEGATIONS

10. Duke hired Plaintiff as a Grounds Equipment Operator on November 11, 2019.

11. On December 6, 2021, Duke promoted Plaintiff to Heavy Equipment Operator Sr., also described in Duke records as Senior Equipment Operator.

12. Plaintiff remained employed by Duke until September 30, 2025. His direct supervisor during the relevant period was Mark Tidwell.

13. Plaintiff was qualified for his position and could perform its essential functions with reasonable accommodation.

14. Plaintiff is Black and African American.

15. Plaintiff has asthma, a physical impairment that substantially limits the major life activity of breathing, particularly when he is exposed to conditions that aggravate his respiratory symptoms.

16. Duke knew of Plaintiff's asthma, his related work restrictions, and his need for reasonable accommodation.

17. Plaintiff also served as a union steward for AFSCME Local 77.

18. Beginning no later than August 2023, Plaintiff opposed what he reasonably believed was disparate and unfair treatment of Black employees as compared with White employees, including during or following a workplace meeting with Scott Thompson.

19. After Plaintiff spoke about unfair treatment of Black employees, Thompson denied Plaintiff food during a lunch provided to other employees.

20. Supervisor Ian Christie used racially offensive nicknames for Black employees, including referring to Plaintiff as "ice cream" and referring to Lamont Ballentine and Jerry Wallace as "Peaches and Herb."

21. Plaintiff reported the racially offensive comments and unequal treatment to Duke's Human Resources personnel and to his union. Duke did not take effective corrective action.

22. Plaintiff repeatedly complained about workplace safety and health conditions, including rodents and feces, mold, flooding, improper storage or handling of chemicals and pesticides, and inadequate personal protective equipment.

23. On April 15, 2025, Plaintiff participated in a workplace demonstration concerning employee working conditions.

24. On April 22, 2025, Plaintiff provided an opinion article to the Duke Chronicle concerning workplace conditions.

25. Duke received Plaintiff's workplace-safety complaint no later than June 5, 2025. Duke's Occupational Hygiene and Safety Division acknowledged the complaint, investigated, observed signs of prior rodent activity, and reported corrective cleaning and pest-control measures.

26. Plaintiff also complained internally of discrimination, harassment, and retaliation and sought assistance from Duke's Office for Institutional Equity ("OIE").

27. On May 6 and May 29, 2025, Plaintiff informed Tidwell that he intended to meet with OIE. Tidwell acknowledged those communications.

28. In July 2025, Plaintiff informed Duke that he believed he had been sent home without pay after his disability-related request was denied and that he was being harassed and retaliated against after contacting OIE and engaging in protected activity.

29. OIE arranged an intake meeting concerning Plaintiff's complaints and advised that he could be accompanied by a union representative.

30. In or around April and May 2025, Plaintiff requested reasonable accommodations for his asthma and related restrictions.

31. Management had suggested that Plaintiff request accommodations and represented that the accommodations would be approved if he completed Duke's process.

32. Duke denied Plaintiff's accommodation requests on three occasions before eventually approving accommodation-related measures.

33. During the accommodation process, Duke sent Plaintiff home and excluded him from work without pay for approximately one month and one week.

34. On or about June 24, 2025, Duke Access and Accommodation Services informed Plaintiff's unit that Plaintiff should not work under the restrictions then pending.

35. On June 25, 2025, Tidwell informed Plaintiff that Duke's accommodation office wished to speak with him about his accommodations.

36. Plaintiff could perform available work that did not conflict with his medical restrictions, but Duke did not timely place him in such work during the unpaid exclusion period.

37. Plaintiff was eligible for and used approved intermittent FMLA leave for a serious health condition. He had worked for Duke for more than twelve months and, upon

information and belief, had worked at least 1,250 hours during the applicable preceding twelve-month period.

38. Plaintiff repeatedly notified Tidwell when he needed to take intermittent FMLA leave. Tidwell acknowledged such notices, including notices on March 5, April 18, May 1, May 15, May 27, May 30, June 13, June 26, July 24, and August 5, 2025.

39. Tidwell also assisted Plaintiff with timekeeping on multiple occasions, including clocking Plaintiff in or out when Plaintiff reported a missing badge or gave notice of work-related movements and absences.

40. After Plaintiff opposed race discrimination, sought accommodations, complained about disability-related treatment, contacted OIE, and used FMLA leave, Duke subjected him to increased scrutiny and adverse treatment.

41. The adverse treatment included delayed and denied accommodation, the unpaid exclusion from work, increased restrictions concerning movement between work areas, reduced overtime opportunities, surveillance, suspension, and termination.

42. Plaintiff repeatedly complained that Duke was denying him overtime opportunities available to other employees.

43. On August 14, 2025, Plaintiff asked whether overtime work could be posted that he could physically perform without conflicting with his disability-related

restrictions. He also informed Tidwell that he intended to speak with someone about filing complaints.

44. Tidwell responded by directing Plaintiff to discuss any departure from the work area in advance and to report when he returned.

45. On or about July 8, 2025, Plaintiff filed a workplace-safety complaint with the North Carolina Department of Labor.

46. Between July 22 and July 30, 2025, Duke conducted video surveillance of Plaintiff and other employees.

47. The surveillance footage depicted Plaintiff and other employees outside their assigned work areas, in or near personal vehicles, arriving or returning at different times, leaving early, and taking breaks while on the clock.

48. Plaintiff did not have an assigned Duke vehicle and historically used his personal vehicle to move between nearby shops on campus for work-related purposes.

49. Movement between nearby shops and the use of personal vehicles for work-related purposes were longstanding practices that Duke had tolerated. The West Campus shop was approximately forty seconds from Plaintiff's assigned shop.

50. Tidwell did not provide Plaintiff written notice that using a personal vehicle or remaining in a vehicle during work time violated Duke policy until August 2025, after the July conduct later relied upon by Duke.

51. On August 14, 2025, Plaintiff visited the OIE lobby to inquire about his complaints. OIE personnel called campus police in response to his visit.

52. Plaintiff disputes Duke's characterization of the August 14, 2025 incident and denies that his conduct justified discipline or termination.

53. On August 18, 2025, Duke placed Plaintiff on paid suspension pending an OIE investigation and a separate timekeeping investigation.

54. On or about September 15, 2025, Plaintiff filed an additional workplace-safety complaint with the North Carolina Department of Labor.

55. On September 24, 2025, Duke held a meeting with Plaintiff, Human Resources personnel, and union representatives concerning the timekeeping investigation and surveillance footage.

56. At the September 24 meeting, Duke showed Plaintiff six surveillance clips.

57. On September 30, 2025, Duke terminated Plaintiff's employment, asserting that he had falsified time or University records and committed time theft based on the July 2025 footage.

58. Duke terminated Maurice Hackney, another Black employee who worked closely with Plaintiff, on the same day.

59. Before his termination, Plaintiff had received no warning or progressive discipline concerning the conduct for which Duke terminated him.

60. Duke's stated reason did not account for Tidwell's knowledge of and participation in Plaintiff's timekeeping, Plaintiff's approved intermittent leave, work-related movements between nearby shops, and Duke's historical tolerance of personal-vehicle use.

61. The same surveillance material depicted non-Black employees and employees who had not made complaints arriving later, leaving earlier, remaining in vehicles, or engaging in similar conduct, but Duke did not terminate or comparably discipline them.

62. Duke therefore enforced its stated timekeeping and vehicle-use expectations selectively against Plaintiff.

63. Duke's decision-makers knew of Plaintiff's complaints about race discrimination, his OIE activity, his accommodation requests and disability-related complaints, and his use of approved FMLA leave.

64. Duke held a meeting titled "Lee Brodie's Concerns" attended by Duke leadership, Human Resources, Staff and Labor Relations, and union representatives, further demonstrating institutional knowledge of Plaintiff's complaints.

65. The sequence of Plaintiff's protected activity, Duke's escalating scrutiny, the lack of prior discipline, the selective enforcement of work rules, the treatment of comparators, and the close timing of Plaintiff's suspension and termination support the inference that Duke's stated reason was pretextual.

66. At the time of his termination, Plaintiff earned approximately $19.78 per hour.

67. Because of Duke's conduct, Plaintiff has suffered lost wages and benefits, lost employment opportunities, emotional distress, mental anguish, stress, anxiety, harm to his professional reputation, and related financial hardship. He has also sought therapy and counseling to cope with the resulting distress.

## COUNT I - RACE DISCRIMINATION IN VIOLATION OF TITLE VII

68. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

69. At all relevant times, Duke was an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

70. Plaintiff is Black and African American, was qualified for his position, and was meeting Duke's legitimate expectations or otherwise performing at a level sufficient to remain employed.

71. Duke subjected Plaintiff to adverse employment actions, including unequal overtime and work opportunities, heightened scrutiny, suspension, and termination.

72. Duke treated similarly situated non-Black employees more favorably by tolerating the same or comparable timekeeping, break, vehicle-use, arrival, and departure conduct without termination or comparable discipline.

73. The racially offensive comments, unequal treatment following Plaintiff's opposition to discrimination, comparator evidence, selective enforcement, and pretextual termination rationale support a reasonable inference that Duke acted because of Plaintiff's race.

74. Duke's conduct violated 42 U.S.C. § 2000e-2(a).

75. As a direct and proximate result, Plaintiff suffered the damages and injuries described above.

## COUNT II - RETALIATION IN VIOLATION OF TITLE VII

76. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

77. Plaintiff engaged in activity protected by Title VII when he opposed disparate and unfair treatment of Black employees, reported racially offensive comments, and complained to Human Resources, management, his union, and OIE about race discrimination and retaliation.

78. Duke knew of Plaintiff's protected opposition.

79. Duke thereafter subjected Plaintiff to materially adverse actions, including increased scrutiny and restrictions, reduced overtime opportunities, surveillance, suspension, and termination.

80. The timing and sequence of events, Duke's knowledge, the escalation of scrutiny, the absence of prior discipline, selective enforcement, comparator treatment, and weaknesses in Duke's stated rationale support a reasonable inference that Plaintiff's protected opposition was a but-for cause of Duke's materially adverse actions.

81. Duke's conduct violated 42 U.S.C. § 2000e-3(a).

82. As a direct and proximate result, Plaintiff suffered the damages and injuries described above.

## COUNT III - DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER THE ADA

83. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

84. At all relevant times, Duke was a covered employer, and Plaintiff was an individual with a disability, within the meaning of the ADA.

85. Plaintiff was qualified to perform the essential functions of his Heavy Equipment Operator Sr. position with reasonable accommodation and could perform available work consistent with his medical restrictions.

86. Duke knew of Plaintiff's disability-related limitations and his requests for accommodation.

87. Plaintiff requested reasonable accommodation, including work consistent with his asthma-related restrictions while Duke processed his requests.

88. Duke denied or delayed Plaintiff's requested accommodations on three occasions and excluded him from work without pay for approximately one month and one week rather than timely identifying and providing an effective accommodation.

89. Duke failed to engage in a timely, good-faith interactive process designed to identify an effective reasonable accommodation and, upon information and belief, could have provided work consistent with Plaintiff's restrictions without undue hardship.

90. Duke also subjected Plaintiff to adverse employment actions because of his disability, including the unpaid exclusion from work and termination.

91. Duke's conduct violated 42 U.S.C. § 12112(a) and (b)(5)(A).

92. As a direct and proximate result, Plaintiff suffered the damages and injuries described above.

## COUNT IV - RETALIATION IN VIOLATION OF THE ADA

93. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

94. Plaintiff engaged in activity protected by the ADA by requesting reasonable accommodations and by opposing and complaining about disability-related discrimination, the handling of his accommodation requests, and retaliation.

95. Duke knew of Plaintiff's protected activity.

96. Duke subjected Plaintiff to materially adverse actions, including delayed or denied accommodation, unpaid exclusion from work, increased scrutiny and restrictions, reduced overtime opportunities, surveillance, suspension, and termination.

97. The timing and sequence of events, Duke's knowledge, its escalating scrutiny, and the pretext evidence described above support a reasonable inference that Plaintiff's protected ADA activity was a but-for cause of Duke's materially adverse actions.

98. Duke's conduct violated 42 U.S.C. § 12203(a).

99. As a direct and proximate result, Plaintiff suffered the damages and injuries described above.

## COUNT V - FMLA INTERFERENCE AND RETALIATION

100. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

101. Duke was a covered employer, and Plaintiff was an eligible employee, within the meaning of the FMLA.

102. Plaintiff was entitled to and used approved intermittent FMLA leave for a serious health condition, and he provided Duke notice when he needed to use that leave.

103. Duke knew that Plaintiff exercised FMLA rights, and Tidwell repeatedly acknowledged Plaintiff's notices.

104. Upon information and belief, Duke considered Plaintiff's protected leave and leave-related absences as negative factors in its scrutiny, timekeeping investigation, and decision to terminate him.

105. By using Plaintiff's protected FMLA leave as a negative factor and penalizing him for exercising FMLA rights, Duke interfered with, restrained, or denied those rights and retaliated against Plaintiff in violation of 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220(c).

106. Duke's conduct caused Plaintiff actual monetary losses, including lost wages, benefits, and employment, and entitles him to the legal and equitable relief available under 29 U.S.C. § 2617.

107. Duke's violations were willful or, alternatively, were not based on reasonable grounds or a good-faith belief that its conduct complied with the FMLA.

## **COUNT VI - RACE DISCRIMINATION AND RETALIATION UNDER 42 U.S.C. § 1981**

108. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

109. Plaintiff's employment relationship with Duke was contractual and constituted a protected contractual relationship within the meaning of 42 U.S.C. § 1981.

110. Duke intentionally discriminated against Plaintiff because of his race in the terms, conditions, and termination of his employment, including through unequal work opportunities, heightened scrutiny, selective enforcement, and discharge.

111. Plaintiff opposed race discrimination and unequal treatment, and Duke intentionally retaliated against him for that opposition.

112. Plaintiff's race and his protected opposition to race discrimination were each a but-for cause of the respective discriminatory and retaliatory actions alleged herein.

113. Duke's conduct impaired Plaintiff's right to make and enforce contracts on the same terms as White citizens, in violation of 42 U.S.C. § 1981.

114. As a direct and proximate result, Plaintiff suffered the damages and injuries described above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant the following relief:

115. A declaratory judgment that Duke violated Title VII, the ADA, the FMLA, and 42 U.S.C. § 1981;

116. Appropriate temporary, preliminary, and permanent injunctive relief as permitted by law, including expungement of discriminatory or retaliatory discipline from Plaintiff's personnel file;

117. Reinstatement to Plaintiff's former position or a substantially equivalent position or, if reinstatement is not feasible, an award of front pay;

118. Back pay, lost overtime, lost benefits, wages lost during the accommodation-related unpaid exclusion, prejudgment interest, and other make-whole relief;

119. Compensatory damages for emotional distress, mental anguish, and other non-pecuniary losses where authorized by law;

120. Punitive damages where authorized by law;

121. Liquidated damages and other relief available under the FMLA, unless Duke proves the statutory good-faith defense;

122. Reasonable attorneys' fees, expert fees, costs, and expenses as authorized by law;

123. Post-judgment interest; and

124. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 9/8 day of September 2026.

Plaintiff Lee Brodie, Jr.
Pro Se

4119 Settlement Drive
Durham, NC 27713
(919) 886-0609